# Commonwealth *v.* Connors, Appellant.

*Criminal law—Larceny—Confederates—Evidence—Photograph.*

On the trial of one of the several defendants indicted for the larceny of money from a bank, it is proper to admit in evidence the photograph of one of the other defendants, when properly identified by a witness who had seen the original, to prove the fact in connection with other testimony

that defendant stole the money while the original of the photograph occupied the attention of the bank officer.

Argued March 9, 1893.  Appeal, No. 317, Jan. T., 1893, by defendant, Wallie Connors, from judgment of O. and T. Northampton Co., June T., 1892, No. 35, on verdict for Commonwealth. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Indictment for larceny of notes from bank.

At the trial, before REEDER, J., there was evidence that defendant went into the Easton National Bank on July 21, 1892, and, while two of his confederates engaged the attention of the bank officer, slipped into the vault and stole a package of notes amounting to $4,000.  One of his confederates was never found nor identified.  The other was ascertained to be a man by the name of Joseph Howard, who was subsequently tried and convicted of a similar offence at Lewisburg.  One of the bank clerks, who had seen Howard in the Easton bank, went to Lewisburg and saw him at his trial, and identified him as the prisoner's confederate in the Easton robbery.  One of the witnesses saw the photograph of defendant in the rogue's gallery in Phila. directly after the robbery.

The commonwealth offered in evidence a photograph marked exhibit No. 2. to be taken in connection with the testimony of other witnesses, that it is a correct picture of the man who was in the Easton National Bank talking to Bixler, whom they subsequently recognized at Lewisburg.

Exhibit No. 2 is objected to because that is a part of other matters appearing on the same paper, and also because there is no evidence that exhibit No. 2 is a photograph of the person who was in the bank upon the 21st of July, 1891, and spoke to Harry Bixler, and that the likeness, exhibit No. 2, is not evidence of the fact of the identity of that person, and the picture offered in evidence; that it is res inter alios acta; and that it is not part of the res gestæ; and that it does not illustrate any fact as to the identity of the defendant being the person who was in the bank on the 21st of July.

By the Court: If the offer is limited to the picture alone, so that the jury cannot see the printed matter connected with it, then the objection is overruled.  Exception. [5]

A photograph of defendant was also given in evidence, under objection and exception. [4]

The court charged in part as follows :

" On the 21st day of July last, one of the clerks, the teller of the Easton National Bank, removed from the safe which was inside of the vaults of that institution a large package of money consisting of one and two dollar bills, and amounting to $4,000. He put it upon a shelf in that vault, and some time during the morning went to that package of notes and handled it, and saw and knew that it was there at that time. Some hours later, when he entered the vault, the package was gone. The precise time that it was taken nobody knew ; how it was taken nobody saw. They do, however, declare that, at an hour when the clerical force at the bank is the most reduced, at a time when there were but two clerks in the bank, a man came into the office of the bank, with tread so noiseless upon the hard tile flooring in that institution as to lead them to believe that he had on felt shoes or shoes with rubber soles.

" He passed over in the direction of where the desk is placed for the convenience of the patrons of the bank, and which was also in the direction of the cashier's room, from which there was a door leading into the interior of the banking office, and in close proximity to the door of the vault, and disappeared. Neither of the bank clerks saw him afterward when he left the bank.

" Immediately after this person came into the banking house, two other persons came in, one of them going to the teller's office and handing the teller a roll of bills, and said, ' Here are $80 with which I want to pay a note which is coming due.' The teller and he had some conversation about the custom of the bank. In the meantime the teller started to count the money, which was inclosed with a paper band, upon which, in ink, were the figures ' $80,' and said to that individual, ' There are not $80 here.'

" [While the teller's attention was attracted by the conversation in proving to this man that he was mistaken in the amount of money which was contained in the roll, the other man engaged the attention of the other clerk by asking of him information in regard to the Bixler family, whom he believed were entitled to a certain sum of money coming from somebody somewhere on the other side of the ocean. While these two

men were engaged in conversation with the two clerks, a customer of the bank, Mr. Mayer, came in;] [7] and, as he came into the door, he says, a man came toward him, his coat was buttoned up and was puffed out, and as he got near the door leading to the street he gave a little cough, upon which the other two men turned from the desks at which they were engaged in conversation with the clerks, and they all went out.

" [The commonwealth claims that these men were not strangers to each other, but that they had been together at different points that morning; that they rode together in a carriage to Easton, and that afterwards they left Easton together. Do you believe these facts? If you do you are warranted in, and almost irresistibly led to, the conclusion that these men were at that bank on that morning for no legitimate purpose; and if they were there for no legitimate purpose, what purpose could they have been there for other than the perpetration of the crime which the commonwealth alleges was committed, if you believe that there was such a crime committed. I say that, if you believe the commonwealth's testimony that these three men that were in that bank that morning, apparently strangers, there each for a different purpose, were the three men who met upon the road between here and Bath, and who were brought to Easton in the same conveyance, who went to the bank separately, and who afterward met again and were driven out of town; and if you believe they were the men who took the cars together at Treichler's Station, I say you are almost led to the irresistible conclusion that they were the men who perpetrated the crime, if you believe the crime was committed.] [8] . . . .

" [You will take into consideration the testimony of the persons near Bath, who testified that, at a certain point after the carriage had ·left Bath, on·this road toward Easton or toward Newburg, this defendant got into the carriage; and you will take into consideration the testimony of Mr. Vreeland who passed the carriage upon the road, and who testifies that he thinks this defendant was in the carriage; you will take into consideration the testimony of other witnesses, I do not recall them, but I think there are one or two others who testify that they met the carriage, and that they also—It was the other man, the man with the whiskers and not the defendant who was

identified by Mrs. Seems, of Bath, as the person who got into the carriage after it left Bath. I was mistaken in saying the defendant was identified as the person seen to get into the carriage at a point near Bath.] " [9]

Verdict, guilty. Defendant appealed.

*Errors assigned* were, among others, (4, 5) ruling on evidence ; (7–9) instructions ; quoting instructions and bills of exceptions, but not evidence.

*Pennell C. Evans, James W. Fox* with him, for appellant, cited : Eborn v. Zimpelman, 26 Am. R. 315 ; Marcy v. Barnes, 16 Gray, 161 ; Blair v. Pelham, 118 Mass. 420 ; Udderzook v. Com., 76 Pa. 340 ; Cowley v. People, 83 N. Y. 479 ; Rice on Evidence, § 459.

*W. S. Kirkpatrick, J. Davis Brodhead,* district attorney, and *Henry W. Scott* with him, for apppellee, cited : Johnston v. Com., 85 Pa. 54 ; Bonner v. Herrick, 99 Pa. 220 ; McKnight v. Matthews, 10 Cent. R. 287.

PER CURIAM, July 19, 1893 :

The prisoner was jointly indicted with two others for the larceny of $4,000 from the Easton National Bank, but for reasons satisfactory to the commonwealth he alone put upon trial. One of the others—Joseph Howard, with several aliases—had theretofore been convicted and was then under sentence in the Eastern Penitentiary for stealing $14,000 from a bank in Lewisburg.

It was claimed by the commonwealth, and the evidence tended to prove, that the prisoner was one of a band of professional thieves and burglars by whom the crime charged in the indictment was adroitly planned and executed with the view of avoiding detection.

An examination of the record with special reference to the specifications of error, fails to disclose any error, either in the admission or rejection of evidence, or in the charge of the court, that requires a reversal of the judgment. The photographic exhibits complained of in several of the specifications were neither incompetent nor irrelevant. They tended, in connec-

tion with other testimony, to identify the prisoner and connect him with the commission of the crime.

Neither of the specifications is sustained.

Judgment affirmed.