# Commonwealth v. Levinson, Appellant.

*Criminal law—Evidence—Independent crimes—Adultery.*

Generally speaking, evidence of an independent crime is not admissible in the trial of a defendant for a specific offense; but where the testimony bears upon the conduct and motive of the accused with reference to the particular charge, or where it tends to show the relation between parties in connection with the crime alleged, such evidence is always admissible.

On the trial of an indictment for larceny of money stolen from the bed of the prosecutor's wife, it may be shown that at the time of the larceny the defendant and the wife were living in adultery.

*Criminal law—Bill of particulars—Larceny—Trespass—Adultery.*

On an indictment for larceny, a bill of particulars furnished by the commonwealth set forth that the defendant committed the larceny charged in the indictment, and that the taking of the property was accompanied by a trespass. The proof showed that the defendant entered an apartment occupied by the prosecutor's wife, in her absence, and took and carried away the money which she had concealed in her bed. It also appeared that the prosecutor's wife had not acted promptly in an effort to recover the money. *Held,* that the evidence supported the bill of particulars, and was sufficient to sustain a conviction.

Receipt from the wife of the husband's goods by an adulterer or one intending to elope with her and live with her in adultery, is larceny from the husband.

Where a wife sells land belonging to her husband as an attorney in fact, and receives the purchase money as his agent, and thereafter elopes with another, and her paramour steals the money from her bed in her absence, he may be convicted of the larceny of the husband's money.

Argued April 10, 1907. Appeal, No. 194, April T., 1907, by defendant, from judgment of Q. S. Allegheny Co., Dec. T., 1906, No. 266, on verdict of guilty in case of Commonwealth

v. Barney Levinson.   Before RICE, P. J., HENDERSON, MORRISON, HEAD and BEAVER, JJ.   Affirmed.

Indictment for larceny.   Before GILLAN, J.

The court charged in part as follows:

The commonwealth has offered evidence to show this: That this prosecutor, Isaac Simpson, owned a farm in South Africa. That he employed the defendant to manage that farm under the terms which were testified to by both of them, and in which they do not differ.   That after he was there for a while he persuaded the owner of the farm to go to Johannesburg.   Subsequently he procured, according to the evidence of the commonwealth, the husband to give a power of attorney to his wife to sell that farm.   A good deal has been said about the deed of sale for the farm; whether it was conveyed by the wife in pursuance of a power of attorney, or whether the husband signed the deed, we are not informed; the papers are not put in evidence before us.

It is further testified, and it is the theory of the commonwealth, and they offer evidence for it, that the defendant connived, schemed, to get this man to sell this farm, to get the money into the hands of the wife, and to get it finally himself. The woman testified that during the summer on this farm he asked her to come with him and ride horseback.   That they rode around the farm, which was a large one; that on their return home he gave her something to drink which made her drunk; that having made her drunk he got her to his room, disrobed her, and had carnal knowledge of her person.   That was the beginning of her downfall.   As I recollect the testimony, that was not contradicted.   It is for you to recollect the testimony, but as I recollect it, the defendant did not contradict that statement of this woman that he made her drunk, thereby secured possession of her person and gratified his animal passions upon her person.

It is further testified that the farm was sold; that the money came into the actual custody of the wife.   She deposited it in a bank in Heilbron, in South Africa.   She subsequently withdrew the money from the bank and brought it to America, at least a portion of it.   I have not gone over the figures to count up just how much was left according to Levinson's statement; you

must remember that. But if you believe from this testimony, and you may believe it, I do not say that you shall, if you find the fact to be that she deposited this money in bank in Heilbron, that she brought it with her to America, that Barney took it from under her pillow as the children testify he did, he is guilty of larceny and ought to be convicted. [The property, the money, was the money of Isaac Simpson. It was the money of no other person. She, according to the testimony, was his attorney in fact; the money was his. Her possession of it was his possession;] [10] and if he took it from under that pillow and appropriated it to his own use he was guilty of the crime of larceny and ought to be convicted.

[Something has been said about her having given him the money. If he obtained that money from her by her handing it over to him by any trick or fraud—if she gave it to him simply to have the custody of it—the ownership not to pass, but to take care of it for her—and he appropriated it to his own use, he is just as much guilty of larceny as though he took it from under the pillow.] [11]

[So you see that it becomes a question of fact, and of fact entirely. Who will you believe? Do you believe the commonwealth's witnesses, or do you believe the defendant's witnesses? That is wholly for you. You will likely inquire of your own mind why any woman would come into a court of justice, in the presence of her children—the product of her womb, in the presence of her husband, and falsely testify to her own shame. Is that possible? Is that in accordance with human experience?

Do the little children tell the truth, or are they, as suggested by the counsel for the defense, telling a story? It is for you to determine.

Did this defendant, while in South Africa, plan to get this woman to America with the money, take it from her, and then send her back penniless to her husband? Did she follow him, pursuing him for evil purposes? If, as contended by the defense, she was following him for an evil purpose, he was not as skillful or as anxious to get away from her as was the great Hebrew of olden time, who lost his coat off his back rather than commit adultery. He could have gotten away from her. Did he try?]

Defendant presented the following points:

1. The commonwealth in this case has set forth in the bill of particulars that the larceny in this case was accomplished by means of a trespass.  Trespass is an essential element in the offense of larceny.  In this case it is undisputed that the money received from the sale of the farm was deposited by Mrs. Simpson in a bank in South Africa in her own name; she and not her husband had possession of the money.  The prosecutor, Mr. Simpson, never had possession of the $6,000, or any part thereof, which it is alleged the defendant stole; hence there can be no trespass against the possession of Simpson and the defendant cannot be convicted of larceny.  *Answer:* Refused. [1]

2. If the jury believe that the defendant and Mrs. Simpson conspired to run away together and steal the money of Mr. Simpson, the prosecutor in this case, and in pursuance of this plan Mrs. Simpson stole his money, her act was his act and there, then, could be no conviction of larceny in this case because the jurisdiction over such an act belongs to the court in South Africa.  *Answer:* Refused. [2]

3. If the jury believe that Mrs. Simpson drew the money out of the bank in South Africa with the intention of running away with the defendant and that subsequently she did run away with the defendant in this case and came to Pittsburg, and subsequently in Pittsburg the defendant took possession of the money in July last with her consent, or having taken said money, the defendant and Mrs. Simpson went to New York together, she knowing he had the money in his possession and consenting to such possession, there can be no conviction of larceny in this case.  *Answer:* Refused. [3]

5. If the jury believe that the money received from the sale of the farms was deposited by Mrs. Simpson in South Africa in a bank in her own name with the knowledge and consent of her husband, a subsequent taking and appropriation to her own use of this money would not be larceny, because there would be then no trespass, and the defendant could not be found guilty of receiving stolen goods.  *Answer:* Refused. [4]

6. Under the pleadings and evidence in this case the verdict of the jury must be for the defendant.  *Answer:* Refused. [5]

Verdict of guilty, upon which judgment of sentence was passed.

290    COMMONWEALTH *v.* LEVINSON, Appellant.

Assignment of Errors—Opinion of the Court.    [34 Pa. Superior Ct.

*Errors assigned* were (1–5, 10–12) above instructions, quoting them.

*W. I. Seymour*, of *Seymour, Patterson & Siebeneck*, with him *R. P. Marshall*, for appellant.—Testimony of independent crimes is inadmissible because it tends to prejudice the minds of the jury against a defendant: Snyder v. Com., 85 Pa. 519; Swan v. Com., 104 Pa. 218.

The commonwealth should have been restricted to evidence tending to prove larceny accompanied by a trespass, and that the court should have charged the jury that they could find the defendant guilty as indicted only if they believed that the defendant's act was accomplished by means of a trespass: Goersen v. Com., 99 Pa. 388; Com. v. Johnston, 19 Pa. Superior Ct. 241; Com. v. Stanley, 19 Pa. Superior Ct. 58.

The conviction cannot be sustained, because Isaac Simpson, the prosecutor, neither owned nor possessed, either actually or constructively, the money: Regina v. Prince, L. R. 1 C. C. Rep. 150; Com. v. Berry, 99 Mass. 428; Bazely's Case, 2 East's P. C. 571.

OPINION BY HENDERSON, J., October 7, 1907:

The appellant contends that this judgment should be reversed for three reasons.    The first is that evidence was admitted of independent crimes committed by the defendant in another country; the second, that a bill of particulars was filed by the commonwealth alleging that the larceny charged in the indictment was accomplished by means of a trespass and that the court should have charged the jury that they could only find the defendant guilty if they believed that the defendant's act was accomplished by means of a trespass; and third, that the prosecutor neither owned nor possessed either actually or constructively the money alleged to have been stolen from him.

It may be conceded that, generally speaking, evidence of an independent crime is not admissible in the trial of a defendant for a specific offense.    Evidence of collateral facts not only does not tend to establish the charge set forth in the indictment but diverts the attention of the jurors from the consideration of the real point in issue and has a tendency to mislead them in their inquiry after the truth.    There are numerous exceptions

to the rule, however, as was shown in Swan v. Com., 104 Pa. 218; Goersen v. Com., 99 Pa. 388; Hester v. Com., 85 Pa. 139 and Com. v. House, 6 Pa. Superior Ct. 92. Where the testimony bears upon the conduct and motive of the accused with reference to the particular charge, or where it tends to show the relation between parties in connection with the crime alleged, such evidence is always admissible. It was with such an object in view that the evidence bearing upon the relation of the defendant to the wife of the prosecutor in Africa and England as well as in this country was offered by the commonwealth and admitted by the court. It did not present a collateral and independent state of facts. The money alleged to have been stolen was taken from under the pillow of the prosecutor's wife's bed in the city of Pittsburg at the home of the defendant's father. It became a matter of prime importance to ascertain how Mrs. Simpson happened to be in Pittsburg at that time, how she became possessed of the large sum of money which she then had, and this inquiry necessarily led to South Africa, to the relation of the defendant to the prosecutor and his wife, his connection with them in the sale of the farm, his influence over the prosecutor's wife, their trip to England and from there to the United States and their association together in various places. Without such evidence the commonwealth could hardly have expected the jury to believe the story of the principal witness for the prosecution or to have convicted the defendant. Much light is thrown upon the charge of the actual larceny in Allegheny county by the testimony showing the intimacy between the prosecutor's wife and the defendant, the sale of the farm, the depositing of the money in the bank in South Africa, the preparation of the paper through which this was accomplished and the transfer of the money by the prosecutor's wife first to England and then to the United States. It is manifest that this evidence was not introduced for the purpose of establishing an independent crime, but to account for the situation of the parties at the time the larceny was committed. If the facts disclosed bore heavily against the defendant they are not to be excluded on that account. Being admissible as a series of events which led up to and made possible the act charged against the defendant in the indictment the court was not in error in admitting the testimony to prove them.

In response to a petition for a bill of particulars, the commonwealth set forth that the defendant committed the larceny charged in the indictment and that the taking of the property was accompanied by a trespass. And this is just what was proved by the evidence of the witnesses for the prosecution. It was thereby shown that the defendant entered the apartment occupied by the prosecutor's wife, in her absence, and took and carried away the money which she had concealed in her bed. This was the only taking shown by the commonwealth and is evidently the act by which the conviction was supported. It is true, the learned trial judge stated to the jury that if the defendant obtained the money from the prosecutor's wife by any trick or fraud, or if she gave it to him simply to have the custody of it, and he afterward appropriated it to his own use, he was guilty of larceny in like manner, as if he took it from under the pillow of the bed. But this instruction was apparently suggested by the claim of the defendant's counsel in the progress of the trial, that the prosecutor's wife gave the defendant the money, and was not based upon any evidence which would have justified the jury in concluding that the money was so given. It did appear that after Mrs. Simpson was informed by her children that the defendant had taken the money, she did not make an immediate effort to recover it, and that she remained quiet about the matter until after the defendant failed to meet her in Liverpool, but if the taking was as shown by the commonwealth, the offense was completed when the money was appropriated by the defendant and the omission of the prosecutor's wife to act promptly in an effort to recover it, did not change the character of the defendant's act.

The evidence warrants the instruction of the court to the effect that the money was the property of the prosecutor. It does not appear whether Simpson executed the deed for the farm, or whether the conveyance was made by his wife, under the authority of the power of attorney, but it is clearly established that the land belonged to the prosecutor, that the money which his wife received was the purchase money therefor, and that she was acting as his attorney in fact in completing the sale. She deposited the money in his behalf, and in keeping the funds, acted as his agent. He could have recovered the

fund from the bank in which it was deposited, or from the defendant in an action at law, by exhibiting the proofs presented at the trial, and he had such a property in the money as supported the averment in the indictment of ownership by him. Much of the appellant's argument would be appropriate if the allegation were that the larceny was committed by the prosecutor's wife, but the charge and the evidence are, that the defendant stole the money when it was in the custody of the prosecutor's agent. This was positively and directly shown, but it was not proved that Mrs. Simpson first committed a larceny of the fund from her husband. We do not deem it necessary to go into a discussion of the amenability of the defendant to the indictment, if the prosecutor's wife stole her husband's money in Africa and afterward converted it into other funds which the defendant subsequently stole, for this is not the case presented by the commonwealth nor that submitted by the court to the jury. Moreover, the authorities are all to the effect that receipt from the wife of the husband's goods by an adulterer or one intending to elope with her and live with her in adultery is larceny from the husband: People v. Schuyler, 6 Cowen, 572; Reg. v. Featherstone, 2 C. L. R. 774; Reg. v. Tollett, 41 E. C. L. 67. If the defendant sustained the illicit relation to the prosecutor's wife which the commonwealth proved, and counseled and connived with her to leave South Africa and go to the United States and afterward took the money from Mrs. Simpson's room, his act would be a larceny of the prosecutor's property. We are not persuaded that any error was committed by the trial judge.

The judgment is affirmed and the record remitted to the court below to the end that the sentence may be carried into execution.