# Commonwealth *v.* Bryson, Appellant.

*Criminal law—Murder — Instructions as to law — Province of court and jury.*

1. It is the duty of the jury to take the law from the court, to the same extent in a criminal case as in any other, and a trial judge can properly so instruct.

2. It is not error for the court in a murder case to say to the jury "you are to take the law from the court as the proper source of information."

*Criminal law—Murder — Dying declarations — Evidence — Excerpts from charge—Charge as a whole—Requests for further instructions.*

3. An instruction cannot properly be separated into parts and these treated piecemeal, on appeal, but it must be viewed as a whole with all its modifying and amplifying portions.

4. The court cannot be convicted of error for saying, in referring to a dying declaration, "the Commonwealth offers in evidence the statement of this woman before her death," where other portions of the charge make it clear that the court did not assume the fact of the declarations having been made.

5. Where a dying declaration as given is not specifically attacked, it is not material that a trial judge did not call the jury's attention to a disagreement of the Commonwealth's witnesses as to whether the district attorney took notes of deceased's dying declarations at her bedside or after leaving it.

6. As a general rule in a murder case, where, at the conclusion of the charge, the court asks counsel if they desire further instructions, and no further request is made, questions not then raised will not be considered on appeal.

*Criminal law—Murder—Insanity—Killing with deadly weapon.*

7. On a trial for murder, where the only defense is insanity, the court cannot be convicted of error in charging that if the jury believe the defendant shot deceased with a deadly weapon intentionally then he is guilty of "either first degree murder, second degree or voluntary manslaughter,......unless you accept the defense interposed here for him."

*Criminal law—Murder—Reasonable doubt—Expert evidence—Charge.*

8. The reasonable doubt contemplated by the law in a murder case is such a doubt as would cause a reasonable man.to hesitate in an event of ordinary importance to himself.

9. A conviction of murder of the second degree will not be reversed because the trial judge says to the jury that in determining the existence of insanity the law applied the "right and wrong" test, "one which men can understand, not the refinement or distinctions of medical science," where he further instructs them to give "careful consideration" to the expert testimony of the doctors on both sides.

*Criminal law—Murder—Charge—Inferences.*

10. A trial judge cannot be convicted of error in commenting on inferences which might be drawn from certain testimony, where he does not limit the number of inferences that might be drawn, and does not point to either of the two mentioned as the more reasonable one.

*Criminal law—Murder — Charge — Inadequacy — Stating testimony.*

11. A trial judge cannot be charged with error in not correctly stating the testimony of a witness, where he gives a correct summary of the testimony, and tells the jury, in passing on the evidence, to rely on their own memories.

*Criminal law—Murder—Insanity—Reasonable doubt — Preponderance of evidence—Burden of proof—Charge.*

12. In a murder case, while all the ingredients necessary to prove the Commonwealth's case must be shown beyond a reasonable doubt, this rule does not apply in considering an affirmative defense such as insanity; there a fair preponderance of the evidence in favor of the defendant is sufficient.

*Criminal law—Murder—Cross-examination—Appeals — Assignment of error.*

13. An assignment of error to the refusal to permit cross-examination of a witness, will not be considered where there is nothing on the record to show the propriety of the attempted cross-examination.

*Criminal law—Murder—Declarations of deceased — Hearsay—Evidence.*

14. On a murder trial, where the defense is insanity, it is not error for the court to refuse to admit declarations of the deceased and another person, made several months before the killing as to

the mental condition of the defendant; such evidence is purely hearsay.

15. The fact that such evidence was offered for the general purpose of explaining and contradicting the dying declarations of the deceased, without pointing out how or in what particular it served those offices, does not change its character or make it any more admissible.

Argued February 12, 1923. Appeal, No. 278, Jan. T., 1923, by defendant, from judgment of O. & T., Huntingdon Co., Sept. T., 1922, on verdict of guilty of murder of the second degree, in case of Commonwealth v. Herbert J. Bryson. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before BAILEY, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the second degree upon which sentence was passed.

*Errors assigned* were various rulings and instructions, sufficiently appearing by the opinion of the Supreme Court, quoting record.

*Wm. Wallace Chisolm,* with him *Harry W. Petrikin,* for appellant.—The court erred in the instructions as to right of the jury to judge law and facts: Com. v. Molten, 230 Pa. 399; Com. v. Gerade, 145 Pa. 289.

Instructions as to dying declarations were erroneous.

Instructions that defendant is guilty if he fired the shot was error: Com. v. Molten, 230 Pa. 399.

Instructions as to reasonable doubt were erroneous: Com. v. Drum, 58 Pa. 9.

*Chester D. Fetterhoof,* District Attorney, with him *Samuel I. Spyker,* Special Assistant District Attorney, for appellee.—It is the duty of a trial judge to declare the law to the jury in every criminal case, and particularly in a homicide case: Meyers v. Com., 83 Pa. 131;

Com. v. Smith, 221 Pa. 552; Com. v. McManus, 143 Pa. 64; Com. v. Vigliotti, 75 Pa. Superior Ct. 366; Com. v. Stern, 58 Pa. Superior Ct. 591.

Where no objection is made at a murder trial to an alleged wrong use of a word by the trial judge although an opportunity is given to make such objection, the question will not be considered on appeal: Com v. Troy, 274 Pa. 265; Com. v. Razmus, 210 Pa. 609; Com. v. Pava, 268 Pa. 520; Com. v. Kaiser, 184 Pa. 493; Com. v. Thomas, 275 Pa. 137; Com. v. Washington, 202 Pa. 148; Com. v. Orr, 138 Pa. 276; Johnson v. Com., 115 Pa. 369; Com. v. Buccieri, 153 Pa. 535.

Where defendant makes no request for particular instructions as to the definition of "reasonable doubt" defendant, on appeal, cannot complain of the inadequacy of the instruction: Com. v. D'Angelo, 29 Pa. Superior Ct. 378.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 12, 1923:

Appellant, Herbert J. Bryson, was convicted of murder of the second degree, for killing Helen Irene Bryson, or Helen Irene Haines, on April 8, 1922.

The undisputed testimony showed that, for some time prior to the homicide, accused and deceased, though not married, had been living together as man and wife. Early in the evening of the fatal day, defendant, who was a practicing physician, telephoned Dr. Hutchison at Huntingdon, eighteen miles distant, requesting him to come to Cassville and attend Mrs. Bryson, who, he said, had been shot through the abdomen; because of the seriousness of the wound, Dr. Hutchison advised defendant to bring her to the Huntingdon hospital for proper medical attention, which he did.

It further appeared that, shortly after her arrival at the hospital, and a few hours before her death, deceased made a dying declaration in the presence of Dr. Hutchison, the district attorney, and four other witnesses. The

physician told deceased her condition was critical; the latter replied she knew she was going to die, and requested to see her mother; then the district attorney asked her if she desired to make a statement, which would be used in court against Dr. Bryson; whereupon she gave the following explanation of her injuries: On the evening of the homicide, a quarrel arose between herself and defendant; he pulled her hair and choked her; she ran out of the room and started upstairs, hesitating long enough to hurl a lamp globe at him as he followed her to the second floor; then she locked herself in a dressing room; this angered accused, who, saying he would "shoot" her, straightway went downstairs, obtained a revolver, returned to the door, forced it open, and executed his threat. These various statements of deceased were not proved by any writings, but were testified to by the witnesses who heard them. The Commonwealth showed, in corroboration of the dying declaration, that there was glass on the stairs, a lamp globe at the foot of them, and the dressing room was found in disorder, with what resembled blood stains on the floor. Defendant offered no competent testimony in denial of the dying declaration, or of the fact that it was made; he set up insanity as a defense.

Various parts of the charge are attacked by appellant, the first assigned as error being the court's statement that, "In this sort of case you are the judges of the law and the facts, the law as well as the facts, but you are to take the law from the court as the proper source of information." There is nothing in these instructions of which defendant can justly complain. It is the duty of the jury to take the law from the court, to the same extent in a criminal case as in any other, and a trial judge can properly so instruct; this point is now settled in Pennsylvania: Com. v. McManus, 143 Pa. 64, 85; Com. v. Bednorciki, 264 Pa. 124, 129.

The second, third, eighth and eleventh assignments of error may be discussed together. The principal com-

plaint there set forth is that, in certain parts of his charge, the trial judge assumed, as a matter of fact, that the dying declaration had been made, and thereby usurped functions of the jury.  For example, it is objected, the trial judge said to the jury, "The Commonwealth offered in evidence the statement by this woman before her death."  In considering this excerpt from the charge, it must be kept in mind that an instruction cannot properly be separated into parts and these treated piecemeal, but must be viewed as a whole with all its modifying and amplifying portions; when so regarded, the excerpt complained of is entirely free from error, for the judge continued by saying, "We have it [the dying declaration] from what she told others, *what they say she told them."*  With all the relevant parts of the instructions taken together, it is clear the court did not assume the fact of the declaration having been made. In the same way, a similar objection to another excerpt from the charge may be disposed of, for, while the judge employed the words "she said," in reviewing the facts contained in the alleged dying declaration, these words must be read in the light of their introduction, which stated that "Several persons testified with regard to what Mrs. Haines [Mrs. Bryson] told them in the J. C. Blair Memorial Hospital, on the evening of the 8th of April, the night before she died."  When the parts of the charge now under discussion are read as a whole, it is apparent that, in using the words criticized, the trial judge was merely repeating what the witnesses, already mentioned by him, had testified Mrs. Bryson had said; and it cannot reasonably be argued the jury may have understood otherwise.  Moreover, the court told the jurors, in connection with the evidence of the dying declaration, "You are to remember these statements from these witnesses," and made it plain that they, the jurors, were "the judges of the facts."

On the assignments of error now before us appellant also specifies the failure of the trial judge to call the

jury's attention to certain matters appearing in the testimony, the most important of which was the disagreement of the Commonwealth's witnesses as to whether the district attorney took notes of deceased's dying declaration at her bedside or after leaving it. It appeared in cross-examination of these witnesses that the district attorney had made a memorandum of some sort as to what deceased said; but, since the declaration, as given, is not specifically attacked, this is not important.

At the end of the charge, the court asked if there were any matters upon which counsel desired further instruction, and none of the points thus far discussed were then, or at any other time, called to the trial judge's attention; this is all that need be said as to them: Com. v. Pava, 268 Pa. 520, 525. On the record presented, we see no error in the judge's reference to the dying declaration as "undisputed."

The fourth assignment complains of the following instruction: "If you believe from all the evidence that this defendant shot deceased, with a deadly weapon,—and a revolver is a deadly weapon in the law,—intentionally, then he is guilty of one of the three grades of felonious homicide, either first degree murder, second degree murder, or voluntary manslaughter. You must believe that beyond a reasonable doubt." The objection is that under this instruction, without more being said on the subject in hand, defendant was deprived of the benefit of his affirmative defense. We are not convinced, however, that the charge could have had any such effect; as an abstract legal proposition, the court's statement of the law is correct (Com. v. Drum, 58 Pa. 9, 22; Com. v. Weinberg, 276 Pa. 255), and, immediately following the above-quoted instruction, after devoting a few words to reasonable doubt, the judge, returning to the thought previously expressed, told the jury that, if they believed the Commonwealth's evidence, defendant should be convicted of one of the three forms of homicide, "*unless* you accept the defense interposed here for him"; then he

took up the defense and repeatedly stated that a finding
of insanity must result in a verdict of not guilty.  We
may add that, since insanity is the only defense presented
by the record, appellant's suggestion that the jury might
have given defendant the benefit of the theory that he,
acted in self-defense, does not merit discussion.

The fifth assignment concerns the proper meaning of a
"reasonable doubt," which was defined by the court below
as "a doubt that would make you hesitate, out in your
own everyday life, to believe the existence of anything as
a fact, in your ordinary everyday affairs, in a matter of
personal concern to yourself."  While it may well be
argued that the kind of doubts which may arise in the
*trivial* affairs of everyday life would not be grave enough
to be regarded as reasonable in the criminal law, it is
equally true, on the other hand, that to require such a
doubt as would influence or control *only the most im-
portant* transactions of life, would be too strong a phrase
to describe properly the kind of reasonable doubt contem-
plated by the law: Com. v. Miller, 139 Pa. 77, 94.  The
language of the court below strikes a mean between these
extremes and very properly requires such a doubt as
would cause a reasonable man to hesitate in an event of
ordinary importance to himself; it is in substantial ac-
cord with our decisions on the subject: Com. v. Drum,
58 Pa. 9, 22; Com. v. Conroy, 207 Pa. 212, 213, 216; Com.
v. Weinberg, supra.

Next, it is contended, in the sixth assignment, that the
trial court belittled the opinions and testimony of cer-
tain physicians by stating that, to determine the exist-
ence of insanity, the law applies the "right and wrong"
test, "one which men can understand, not the refinement
or distinctions of medical science."  Even if these re-
marks had the disparaging tendency suggested, which
we do not believe, their effect was adequately corrected
by a subsequent instruction to give "consideration, and
careful consideration" to the expert testimony of the
doctors on both sides.

In reviewing the evidence for the benefit of the jury, the court below pointed out that Dr. Hutchison testified defendant seemed anxious to have his wife put on the operating table immediately after their arrival at the hospital, and the judge then made a comment, assigned as error (seventh specification), that two inferences might be drawn from that testimony, one, that accused was eager for his wife to have the best possible attention, and the other, that he was anxious to put her in such a position that she could not talk about what had happened. The judge suggested, but did not limit, the number of inferences which might be drawn, and he did not point to either of those mentioned as the more reasonable one; in fact, if he may be said to have stressed either, it was the first, which was favorable to defendant. This specification presents no proper ground of complaint, nor does the ninth assignment. Under the latter appellant argues the trial judge did not correctly state the testimony of one of his witnesses, a Dr. Williams; as to this, it is sufficient to say the charge gives a fair summary of the testimony, and the jurors were told to rely on their own memories, in passing on the evidence.

One of defendant's requests for charge reads as follows: "The burden rests on the Commonwealth to satisfy the jury of the defendant's guilt beyond a reasonable doubt. This burden never shifts, and the legal presumption is that the defendant is innocent." The court affirmed the point with the qualification that, in a defense of insanity, the burden is on accused to establish that defense by a fair preponderance of the evidence; this answer is assigned, in the tenth specification of error, as one which might make the jury believe the burden of proof had actually shifted from the Commonwealth to the accused. Of course the burden of proving defendant's guilt beyond a reasonable doubt never shifts (Turner v. Com., 86 Pa. 54, 74), but we see nothing in the point and answer before us to give a contrary impression. Taken together, they constitute a literal compliance

with our words in Com. v. Colandro, 231 Pa. 343, 349, 350, where we said that, in trying a case of this character, "the court should have two principles in mind to communicate to the jury for their guidance, namely, (1) while all the ingredients necessary to prove the Commonwealth's case must be shown beyond a reasonable doubt, (2) this severe rule does not apply in considering an affirmative defense; there a fair preponderance of the evidence in favor of the defendant is sufficient: Meyers v. Com., 83 Pa. 131; Com. v. Deitrick, 218 Pa. 36." See also Com. v. Andrews, 234 Pa. 597, 604; Com. v. Weinberg, supra.

The twelfth assignment relates to the refusal of the court to permit counsel for defendant to ask the mother of deceased, on cross-examination, whether she knew a certain Mr. Connelly, whether he kept a boarding house, how long she had boarded with him, whether certain checks were given in payment of board bills. It is now declared that the purpose of the excluded testimony was to prove the bad character of the witness, but it was not so stated at trial, and there is nothing on the record before us to show the propriety of the attempted cross-examination. The witness was put on the stand to prove the age of her daughter, and the fact that deceased was not married to defendant. The questions propounded related neither to her examination in chief nor to her credibility; they were wholly immaterial and irrelevant.

The fourteenth assignment was withdrawn. The thirteenth and fifteenth complain that a witness for defendant was not allowed to repeat certain statements, concerning the mental condition of accused, alleged to have been made by deceased and another person several months before the killing. We agree with the court below that this evidence was purely hearsay, and the fact that it was offered for the general purpose of explaining and contradicting the dying declaration of deceased, without pointing out how or in what particulars it

served those offices, did not change its character or make it any more admissible.

The case was fairly tried by the court below, and the proofs, which amply justify the verdict, were reviewed and submitted to the jury in an adequate and impartial charge; we see no reason to reverse.

The assignments of error are all overruled, and the judgment is affirmed.