## Commonwealth *v.* Winter, Appellant.

*Criminal law—Murder—Evidence—Photographs—Discretion of court.*

1. Photographs are admissible in evidence for proper purposes in criminal cases.

2. That they may militate against the accused is no ground for rejecting them, if their use is in aid of the jury's investigation of the crime, as where they were used by a doctor to explain the location and severity of the wounds which he found on the bodies of the deceased.

3. The admission of photographs and the use to be made of them must necessarily rest largely in the discretion of the trial judge.

*Criminal law—Murder—Evidence—Other crimes—Motives.*

4. The general rule is that, on defendant's trial for the commission of one offense, evidence cannot be given against him of other and unrelated crimes.

5. To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish.

6. The courts are bound to recognize, particularly in crimes relating to matters of sex, that the mental state of the accused is an important factor; anything which throws light upon the state of his mind just previous to the commission of the offense with which he is charged, strongly illuminates his place in the picture of the crime and gives better opportunity to estimate the likelihood of his connection with it.

7. On the trial of an indictment for the murder of two small children, where the theory of the prosecution supported by some evidence, is that defendant killed them as a result of his having

debauched or attempted to debauch them, it is proper to admit evidence that, shortly before the commission of the crime, he had solicited two older brothers of the children to commit an unnatural crime.

*Criminal law—Murder—Evidence—Articles of clothing — Husband and wife—Act of May 23, 1887, P. L. 158.*

8. On the trial of an indictment for murder, the admission of a coat of the accused in evidence, cannot be objected to as in violation of the Act of May 23, 1887, P. L. 158, forbidding the testimony of wife and husband against each other, where there is nothing to show that the deceased had ever given the coat to his wife, and it is shown that defendant admitted that the coat was his when produced to him after his arrest.

9. On a murder trial it is proper to refuse evidence as to the presence of another man near the scene of the crime, where there is no attempt to connect such individual with the deceased or the crime.

*Criminal law — Murder — Insanity — Opinion of nonexpert witness.*

10. Where a lay witness is offered to express an opinion that a prisoner, indicted for murder, is insane, he must state facts observed by him that, in the judgment of the court, tends to justify the opinion which he is about to express.

*Criminal law—Murder—Charge—Excerpts — Requests for further instructions—Appeals—Harmless errors.*

11. Excerpts from the charge are not ground for error where, taken in connection with the context and other parts of the charge, they are not erroneous.

12. As a general rule in a murder case, where, at the conclusion of the charge, the court asks counsel if they desire further instructions, and no further request is made, questions not then raised will not be considered on appeal.

13. A defendant in a homicide case has no standing in an appellate court to complain of an erroneous instruction unless the error contributed to the result reached by the jury.

Argued March 14, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 69 and 70, March T., 1927, by defendant, from judgment of O. & T. Allegheny Co., Sept. T., 1925, Nos. 75 and 77, on verdict of murder of the first degree,

in case of Commonwealth v. Raymond Winter. Affirmed.

Indictments for murder. Before SMITH, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on both indictments, with death fixed as penalty, on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Chas. B. Prichard,* for appellant.—Photographs of the deceased children, taken at the morgue more than twenty-four hours after death, were not admissible in evidence: Moorman v. State, 109 Miss. 847; Smith v. R. R., 177 N. Y. 379.

The evidence tending to show a solicitation by defendant of two older brothers of the deceased children to commit sodomy at Castle Shannon during the forenoon, and sometime before he was seen with the deceased children, were not admissible: Shaffner v. Com., 72 Pa. 60, 65; Com. v. Saulsbury, 152 Pa. 554, 558; Com. v. Wilson, 186 Pa. 1; Com. v. House, 223 Pa. 487, 492; Com. v. Jones, 280 Pa. 368; Com. v. Thomas, 282 Pa. 20.

The garments procured from defendant's wife, and the testimony with reference thereto, were not admissible: Com. v. Fisher, 221 Pa. 538.

Evidence tending to show the presence of another person near the scene of the killing was admissible.

*Harry A. Estep,* with him *Samuel H. Gardner,* District Attorney, for appellee.—The photographs of the children were properly admitted: Udderzook v. Com., 76 Pa. 340; Fowler v. Sergeant, 1 Grant 358.

The evidence tending to show a solicitation by defendant of two older brothers was admissible: Com. v. Fer-

·rigan, 44 Pa. 386; Turner v. Com., 86 Pa. 54; Com. v. Shanor, 29 Pa. Superior Ct. 358; Com. v. Levinson, 34 Pa. Superior Ct. 286; Com. v. Wendt, 258 Pa. 325; Com. v. Jones, 280 Pa. 368.

The garments procured from defendant's wife and the testimony with reference thereto were admissible: Com. v. Vigliotti, 75 Pa. Superior Ct. 366; Com. v. O'Malley, 81 Pa. Superior Ct. 100.

OPINION BY MR. JUSTICE SCHAFFER, April 18, 1927:

Defendant appeals from his sentence to death resulting from the finding that in murders of the first degree he had killed two children, a brother and sister, one seven years old and the other nine.

The important facts elicited at the trial are these: Defendant, a street car conductor about thirty-two years of age, reported to his place of employment in the early morning of May 27, 1925, but was not assigned to duty. He remained about the car barn until shortly before noon. While there he unsuccessfully solicited two older brothers of the deceased children to commit sodomy and shortly after proceeded by trolley car to a place about a mile distant from the car barn in the vicinity where the deceased children lived, met them by accident, took them to a near-by store and bought confectionery for them. He was seen leaving the store with the two children about noon, walking with them in the direction of the place where their bodies were subsequently found. Defendant testified that after walking some distance along the road with him, the children turned back and retraced their steps. No one saw them returning. Their bodies were found the next day in a creek, some little distance from the road on which defendant says he walked with them.

The appellant tells a remarkable story as to what happened during the afternoon, after the children left him as he claims. He alleges that he is something of an artist, and, after their departure, he walked further out the road, sat down, looked at the scenery for sometime,

then left the road, and crossed a field to a creek about a hundred feet therefrom and there saw the bodies of the two children face down in the water. This could not have been more than an hour and a half after he says they left him. He testified that he picked them up, realized that they were dead and returned the bodies to the water in the position in which he found them. He saw that they had been assaulted and in handling their bodies got blood on his coat and hands. The fact was that their skulls had been fractured by some blunt instrument. After replacing their bodies in the creek, he left the scene. He said he walked toward the street car tracks, then turned and retraced his steps, passing the bodies, met some children, to whom he made a remark, and soon after met a brother of the deceased children, to whom he stated that he had not seen them. He then proceeded to the crew's room of the traction company, sat around there for awhile, concluded that he would not tell anyone about the dead children but "would leave it to the authorities," went home and took the buttons off his bloody uniform coat and put them on another. He admitted that the coat sleeves when it was found next day by the detectives were wet but excused this by the statement that the coat had accidentally dropped in the bath tub in which he took a bath. He stayed at home that night, saying nothing to his wife, went to work next morning, during the course of which he was taken into custody by the officers investigating the children's absence, their bodies not then having been discovered. The officers took him out over the road where he had walked with the children. He did not tell them of his finding their bodies, and did not disclose this until he testified at the trial. He denied to the detectives having seen the children after they left him on the road. When questioned as to the clothing which he had on at the time of his arrest, he untruthfully said it was the same he had worn the day before when he was with the children. When confronted with the uniform coat which he

had worn and which detectives had procured at his home, he admitted it was his and that he had worn it on the previous day. The coat was damp, bore evidence that the sleeves had been scrubbed and a part of the lining cut out. There were spots on the coat which upon chemical analysis proved to be human blood. He denied that he had anything to do with the death of the children. Physicians called in his behalf gave it as their opinion that he was not of sound mind and was suffering from dementia praecox.

We are asked to set aside appellant's conviction, first, on the ground that photographs of the deceased children taken at the morgue more than twenty-four hours after death were improperly admitted in evidence. These pictures, whose correctness is not denied, were produced before the jury, it is argued, for the purpose of arousing their sympathy and exciting their prejudices against the accused. If that was the purpose in offering them, they should not have been received, but we find on examining the record that they were used by the doctor who performed the autopsies on the children, to explain the location and severity of the wounds he found on the bodies. Ever since Udderzook v. Com., 76 Pa. 340, photographs have been admitted in the trial of criminal cases and it is right that they should be for proper purposes: Com. v. Webb, 252 Pa. 187, 198; Com. v. Keller, 191 Pa. 122; Beardslee v. Columbia Twp., 188 Pa. 496; Com. v. Connors, 156 Pa. 147; Com. v. Swartz, 40 Pa. Superior Ct. 370; Wilson v. United States, 162 U. S. 613, 621; 16 C. J., p. 744, section 1528. That they may militate against the accused is no ground for rejecting them if their use is in aid of the jury's investigation of the crime: Wigmore on Evidence, 2d ed., vol. 2, section 792. The admission of photographs and the use to be made of them on the trial must necessarily rest largely in the discretion of the trial judge, who can determine whether they serve a proper purpose in the jury's enlightenment. We discover no abuse of that discretion here.

The second point of attack on the result reached in the court below rests on the proposition that it was improper to admit the evidence against defendant that on the morning of the day the two children came to their death he had solicited their two older brothers to commit sodomy. In considering this question it is important to remember that the solicitation took place probably within an hour of the time when he met the two deceased children. The general rule is that on the trial for the commission of one offense evidence cannot be given against a defendant of other and unrelated crimes: Wharton's Criminal Evidence, 10th ed., section 29; Shaffner v. Com., 72 Pa. 60; Com. v. Saulsbury, 152 Pa. 554; Com. v. House, 223 Pa. 487. In the Shaffner Case Mr. Justice AGNEW, speaking for the court, called attention to the exception to the general rule, saying (p. 65), "To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor linking them together for some purpose he intended to accomplish;......it is obvious [the evidence of another criminal act] should not be received, unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner." The courts are bound to recognize, particularly in crimes relating to matters of sex (Wigmore on Evidence, vol. 1, sections 394, 398), that the mental state of the accused is an important factor; anything which throws light upon his state of mind just previous to the commission of the offense with which he is charged strongly illuminates his place in the picture of the crime and gives better opportunity to estimate the likelihood of his connection with it. We think it cannot logically be contended that it would not be relevant where the charge was rape to show that just prior to the commission of that crime the prisoner had attempted to ravish another woman. In the instant case, it is the theory of the prosecution that the defendant killed these children as a result of his having debauched or attempted

to debauch them, and,—as showing the state of his mind, just prior to his coming in contact with them, as being such as would lead him to the commission of crime upon them,—it was proper and relevant to show his crime-seeking attitude with other children. This takes the evidence out of the rule as to unrelated crimes and makes it competent and proper for reception. In Com. v. Ferrigan, 44 Pa. 386, it was said, "On the trial of a criminal prosecution, where the facts and circumstances offered in evidence amount to proof of a crime other than that charged, and there is ground to believe *that the crime charged grew out of it,* or was caused by it, such facts and circumstances may be admitted to show the quo animo of the accused." With what motive appellant persuaded the deceased children to accompany him may be found in the circumstance of what occurred shortly before between him and the other children. As was pointed out by the court in the last cited case, the proof of one crime by another is sanctioned by the murder statute itself where killings in the perpetration of certain major crimes, arson, rape, robbery and burglary are fixed as murders of the first degree. As was also there said, "It would be difficult to detect criminals and bring them to punishment by any other means than by following the thread of impelling motives." In Com. v. Levinson, 34 Pa. Superior Ct. 286, 291, Judge HENDERSON, writing the opinion, observed: "Where the testimony bears upon the *conduct and motive* of the accused with reference to the particular charge,......such evidence [of independent crimes] is always admissible......Being admissible as a series of events which led up to......the act charged against the defendant......the court was not in error in admitting the testimony to prove them." In Com. v. Wendt, 258 Pa. 325, 336, Mr. Justice STEWART delivering the opinion, we said, "The prosecution had a right to show the participation in the earlier offense in order to establish motive for the commission of the latter for which he was being tried." In Com. v. Dorst, 285

Pa. 232, where the defendant was on trial for murder in the perpetration of a robbery, the Commonwealth was permitted to show that he had committed another robbery just shortly before. Quoting from an earlier decision, we said (p. 237) : "Under some circumstances, evidence of another offense by the defendant may be given. Thus it may be to establish identity; to show that the act charged was intentional and wilful, not accidental; to prove motive; to show guilty knowledge and purpose, and to rebut any inference of mistake." In Com. v. Weiss et al., 284 Pa. 105, where the defendants had been convicted of a murder in the perpetration of a robbery, we sanctioned the admission of evidence of another robbery committed by them shortly after and away from the scene of the homicide, "as showing that the defendants in their flight desired to secure funds so that they might leave the scene of the murder." Our conclusion is that the evidence of defendant's solicitation of the two other children to commit an unnatural crime was properly received as showing his state of mind on the day in question shortly before the commission of the crime with which he was charged, and the motive which governed him in seeking to have the two deceased children accompany him, and in their subsequent murders.

Complaint is made of the receipt in evidence of articles of clothing which the officers of the law procured at the defendant's house when they searched it, the position of appellant's counsel being that it was admitted in violation of the Evidence Act of May 23, 1887, P. L. 158, forbidding the testimony of husband and wife against each other, the allegation being that the garments in question were obtained from the wife. We are not required to pass upon the broad question thus presented because the only garments worn by the deceased on the day of the crime which could be said to be in the wife's custody were the shirt and suit of underwear. These were not offered in evidence. The coat was, but it was not shown that it had been given by the husband into the

custody of the wife, if that would make it inadmissible, which we do not decide. The coat was taken by the officer from the back of a chair in the house occupied by the defendant where he said he had placed it. Furthermore, appellant admitted when the coat was shown to him after his arrest that it was his. There was no error in permitting the coat to be offered in evidence.

It is argued that the court improperly excluded evidence tending to show that another than the prisoner was near the scene of the killing on the afternoon of the crime. What was really proposed to be shown was that between 9 and 10 o'clock in the morning a strange man in blue overalls was shaved in a barber shop a mile or more from where the childrens' bodies were found; this, coupled with evidence that searchers for the children had seen a man in an overall suit pass them on the road. It was not attempted to be established that the two individuals were the same person, nor was there the slightest attempt to connect this individual in any way with the children or with the crime. Under these circumstances, we think there was no error in rejecting the testimony.

The fifteenth to the twenty-second assignments of error complain of the refusal of the court to permit answers propounded to witnesses for the defense intended to establish a basis for the claim of defendant's insanity. These questions were: "[Addressed to his father] How was he with reference to athletic sports, being out with other fellows?" "Was there any difference between him and the same age of Hilton [another son]?" "How was he with reference to attending to his duties?" "How was he with reference to endurance?" "Did you notice anything about him that caused you to comment [Addressed to his mother]?" "Now will you describe him as a boy and a youth in your house as to his health [Addressed to his wife]?" "While you were living with him, how many times did you move?" "What were his habits with reference to coming home?" It is difficult to see

how responsive answers to any of these questions could have thrown any worth-while light on his mental state.

We considered the subject of the testimony of lay witnesses on the question of insanity in Com. v. Cavalier, 284 Pa. 311, and said (p. 319) : "The wise and proper rule is that such opinion testimony [of nonexpert witnesses] should not be received unless, in the opinion of the trial judge, the facts testified to were sufficient upon which to base an opinion. But when a lay witness is offered to express the opinion that the prisoner was sane or insane, he must state facts observed by him, that, in the judgment of the court, tend to justify the opinion which he is about to express." The questions which were excluded, addressed to the parents and wife of the accused, were far afield from an inquiry as to his state of mind. These witnesses were, however, permitted to draw a verbal picture of the accused, his habits, conduct, appearance, health and other details of his life as they observed them; it is significant that none of them was asked to express an opinion as to whether he was sane or insane. Alienists who were called and who examined him testified that in their opinion he was not of sound mind. We think there was no error in refusing to permit answers to be made to the questions set forth in the above mentioned assignments.

The twenty-third and twenty-fourth assignments are to the refusal of the court to affirm points of the defendant to the effect that the testimony was not sufficient to warrant a verdict of murder of the first degree or a verdict higher than that of murder in the second degree. We think, under the proofs, as we gather and correlate them from the entire record there was sufficient testimony to warrant the jury in its finding of first degree murder.

Other assignments complain of the charge of the court. We think none of them of merit. It is alleged the court stated that the defendant was guilty of a wilful, deliberate and premeditated killing. The language

upon which this is based is, "The claim of the Common-
wealth in this case,—and they have pressed home to the
jury, as was their duty as they view the evidence,—was
to convict of murder in the first degree, the defendant be-
ing guilty of a wilful, deliberate and premeditated kill-
ing." When this is taken in connection with its context
and the other parts of the charge, it is obvious that what
the court meant was not to assert that the defendant was
guilty but that in the view of the Commonwealth he was.

It is alleged that the trial judge failed to charge that
an unlawful killing with malice is presumed in the first
instance to be second degree murder. We think this
hypercritical, because the court did adequately instruct
the jury as to the different degrees of homicide. If fur-
ther instructions were desired as to this, they should
have been asked for. At the conclusion of his charge,
the judge inquired whether there was anything by way
of correction or addition which counsel desired him to
say; if so, he would be glad to supplement his remarks.
Counsel for the defendant made no response to this
proffer.

It is complained that it was not stated in the charge
that the verdict might be "not guilty by reason of in-
sanity." It is true that these exact words were not used.
The court did say, "If you find he was irresponsible and
insane at the time, under the instructions which I have
read to you from the authorities, then you would find the
defendant not guilty, generally, of all three crimes
charged." There can be no question that the jury under-
stood from these instructions that if they believed the
defendant insane, he was entitled to be acquitted. If
defendant's counsel wished specific instructions as to
how their verdict in this respect should be rendered, he
should either have put a point to that effect or called the
court's attention to the matter at the close of the charge
when the court gave opportunity for suggestion. It is
inconceivable that the jury would have found a verdict
of guilty, accompanied with a sentence to death, if they

were convinced the one charged before them was insane. The only effect of the special finding of acquittal on the ground of insanity would be to authorize the court to order the defendant into custody while he continued of unsound mind: Act March 31, 1860, P. L. 445, section 66.

Complaint is made in the thirtieth assignment that the charge of the court was not clear as to the burden of proof on the Commonwealth and the burden on the defense. While the particular excerpt from the charge quoted in this assignment may be the subject of criticism, we think taken as a whole the charge adequately presented the contentions of both sides, and the relevant rules of law.

Other assignments set up that the court erroneously told the jury that the burden was upon the defendant to satisfy them that he was insane, the criticism being that the court did not qualify the statement by adding that they should be satisfied by the fair preponderance of the evidence (Com. v. Colandro, 231 Pa. 343, 345; Com. v. Bryson, 276 Pa. 566). The court did not instruct the jury categorically that they must be satisfied as to the insanity defense beyond a reasonable doubt; what the court did say was: "When the defendant sets up insanity as a defense, the burden is upon him to prove it, or to satisfy you that he was insane, for the presumption of law is that every person is sane until the contrary is proved. So that the burden rests upon the one who claims to have been insane at the time of the commission of a crime to prove he was insane, the law presuming, until that is shown to the satisfaction of the jury, that he was sane and accountable for his actions......You will inquire: Was the defendant insane? Has he satisfied you that he was insane?" We think defendant could not have been harmed by the instructions as they were given, and if he desired the qualification which is now contended should have been given, that the jury should be satisfied as to his defense of insanity "by a fair pre-

ponderance of the evidence," the judge's attention should have been called to the failure to so state, when he indicated his willingness to amplify his instructions. As a general rule, in a murder case, where, at the conclusion of the charge, the court asks counsel if they desire further instructions, and no further request is made, questions not then raised will not be considered on appeal: Com. v. Bryson, 276 Pa. 566. A defendant in a homicide case has no standing in an appellate court to complain of an erroneous instruction unless the error contributed to the result reached by the jury: Com. v. Divomte, 262 Pa. 504. We are unconvinced that the failure to charge in the way complained of contributed to the result which the jury reached.

The last complaint made by the defendant is that the court in its charge unduly magnified the Commonwealth's testimony and minimized that of the defense. A careful reading of the charge does not lead us to so conclude.

A painstaking study of the entire record satisfies our minds that there are present the ingredients of murder of the first degree and that the defendant merits the fate which the jury meted out to him.

The assignments of error are overruled, the judgment is affirmed and the record is remitted to the court below for the purposes of execution.